IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THERESA M. ERNST,

                                                                         OPINION and ORDER

                  Plaintiff,

                                                                 10-cv-011-bbc

      v.

MICHAEL ASTRUE,
Commissioner of Social Security,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Theresa M. Ernst seeks reversal of the commissioner's decision that she is not disabled and thus not eligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(I) and 423(d) and 1382(c)(3)(A). Plaintiff contends that the administrative law judge erred when he found that plaintiff's shoulder impairment was not equivalent to a listed impairment and that there were a significant number of jobs in the regional economy that plaintiff could perform. Having carefully reviewed the record and the administrative law judge's decision, I am

1

rejecting plaintiff's arguments and affirming the commissioner's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background

Plaintiff was born on March 29, 1963. AR 19.  She has a tenth grade education, AR 14, and has worked as a hospital housekeeper and bus aide, AR 53.

After a March 2004 injury to her right shoulder, plaintiff filed a workers' compensation claim for that injury.  She received payments from workers' compensation until her claim settled in October 2007 for $43,800.  AR 127, 133.  During the pendency of her claim, plaintiff worked with a qualified rehabilitation consultant, who assisted plaintiff with medical management, job placement and job search.  Plaintiff cooperated fully with her vocational rehabilitation.  AR 350-694.

On May 12, 2006, plaintiff filed an application for disability insurance benefits and supplemental security income, alleging that she had been unable to work since March 17, 2004 because of problems with her right shoulder and arm.  AR 46, 149.  In conjunction with her application, plaintiff completed a Physical Activities Questionnaire, stating that she washed dishes, laundered clothes and vacuumed with one arm because she could not use her right arm.  AR 166.

After the local disability agency denied plaintiff's application initially and upon reconsideration, she requested a hearing, which was held on August 17, 2008 before Administrative Law Judge Larry Meuwissen. The administrative law judge heard testimony from plaintiff, AR 13-30, and from a neutral vocational expert. AR 31-37. On November 25, 2008, the administrative law judge issued his decision, finding plaintiff not disabled. AR 46-55. This decision became the final decision of the commissioner on December 17, 2009, when the Appeals Council denied plaintiff's request for review. AR 1-4.

### B. Medical Evidence

From 2004 through 2008, plaintiff sought medical treatment for her right shoulder from various doctors, beginning March 17, 2004, when she injured her right shoulder at work and was seen at the St. Mary's Medical Center emergency room in Duluth, Minnesota. Her x-ray was normal. The diagnosis was right shoulder sprain. AR 229. Plaintiff participated in physical therapy and received cortisone injections. AR 968, 971.

On July 1, 2004, plaintiff was seen by Joseph F. Lemker, an orthopedic surgeon, at the Duluth Clinic. AR 974. On examination, plaintiff's range of motion was full in the left shoulder and "guarded" in the right shoulder. Lemker diagnosed right shoulder impingement. AR 975. On July 22, 2004, he performed right shoulder arthroscopy surgery on plaintiff. AR 733-34.

3

On September 23, 2004, Dr. Lemker examined plaintiff and noted that she had full range of motion of her bilateral shoulder joints, with very little impingement on the right. He noted that her previous right shoulder impingement was now only a minimal problem. AR 618. On October 2, 2004, Lemker released her to light work with no overhead work. AR 617.

On April 22, 2005, plaintiff returned to Dr. Lemker, complaining of general soreness, stiffness and weakness in her right shoulder. After examining plaintiff, Lemker concluded that although she had been progressing nicely, she was now regressing. He gave her an injection in her right shoulder joint. AR 983.

On May 4, 2005, Dr. Lemker performed a diagnostic arthroscopic surgery on plaintiff's right shoulder. AR 727. On July 2, 2005, Lemker released plaintiff to sedentary work with limited use of her right upper extremity. AR 570. On July 28, 2005, plaintiff saw Lemker again, reporting some discomfort and loss of motion. He indicated that she had "more of an adhesive capsulitis picture," a "frozen shoulder" with limited range of motion. Lemker gave her an injection and encouraged to keep attending physical therapy sessions. AR 290-91. On September 28, 2005, Dr. Lemker performed a "manipulation" of plaintiff's right shoulder under anesthesia. AR 249.

On December 13, 2005, plaintiff saw Dr. Jeffrey P. Klassen, an orthopedist, for a second opinion. He noted that plaintiff's November 22, 2005 magnetic resonance imaging

4

arthrogram was unremarkable and he diagnosed right shoulder and arm regional pain syndrome. He ordered tests to rule out cervical radiculopathy. AR 305-06.

On January 4, 2006, Dr. Klassen saw plaintiff and reviewed her tests. He noted that the cervical spine magnetic resonance imaging scan showed some minor focal disc narrowing at the C-4-5 level, which he suspected was not causing any symptoms. He recommended that plaintiff undergo a functional capacity evaluation and proceed with a pain management program. AR 307.

On March 9, 2006, plaintiff saw Dr. Lemker. He noted that she continued to struggle with gaining motion. He recommended that she participate in pool therapy. AR 1006.

On May 4, 2006, Dr. Lemker saw plaintiff and told her he would not recommend surgical intervention. He wrote that plaintiff was going to start working with the Pain Management Clinic in June, AR 1010, and he returned plaintiff to sedentary work with limited use of her right upper extremity. AR 944. At the pain clinic, plaintiff reported she was able to drive a car but only with her left hand. AR 743.

On June 15, 2006, plaintiff saw Dr. Edward Kelly for a second opinion. He indicated that the magnetic resonance imaging scan and x-rays looked good and did not reveal any structural damage. He explained to plaintiff that she was not a candidate for shoulder replacement because her joint surface looked good. He noted that plaintiff demonstrated an "exacerbated pain response" upon physical examination. AR 353-55.

5

On July 11, 2006, plaintiff went to see Dr. James D. Butcher in the orthopedic clinic, complaining of left shoulder pain. He diagnosed rotator cuff tendinopathy related to overuse of her left shoulder. Butcher offered her a cortisone injection, which she refused. AR 809.

On October 10, 2006, plaintiff saw Dr. Brian Konowalchuk in the Occupational Medicine Clinic. Konowalchuk noted that plaintiff had successfully completed the pain management program. On examination, he noted that plaintiff's range of motion in her right shoulder was very limited both actively and passively, but concluded that maximum medical improvement had been obtained. He assigned her permanent restrictions, including "no use of and no lifting greater than five pounds" with the right arm. AR 774-75.

On March 13, 2008, plaintiff saw Dr. Peter G. Goldschmidt, an orthopedist. On examination, he noted that both of plaintiff's shoulders showed reasonably well preserved flexion and extension with limitation of internal rotation. He informed plaintiff that her x-rays were unremarkable.

On May 23, 2008, plaintiff saw Dr. Lemker. He diagnosed possible biceps tendon attenuation of fraying, possible partial rotator cuff tear and ongoing adhesive capsulitis. He recommended another manipulation of her right shoulder under anesthesia, which was performed in June 2008. He did not recommend aggressive surgical intervention, AR 1072, but did recommend more aggressive physical therapy.

On August 14, 2008, plaintiff saw Dr. Troy D. Erickson at the Orthopedic Clinic.

6

He concluded that there was no reason plaintiff could not have full range of motion and that she was not complying with physical therapy. He found plaintiff could perform light work without lifting anything over her shoulder level and could use her right arm to lift 20 pounds at waist level occasionally and 10 pounds frequently. AR 1132.

On September 11, 2008, plaintiff saw Dr. Erickson again. She stated, " I can't go back to work because I have other issues in my life and I just cannot go back to work." AR 1130. She had missed some of her physical therapy appointments because of neck pain. Erickson noted that plaintiff "could at least be on light work, doing all types of activities below shoulder height." AR 1130.

### C.  Consulting Physicians

On August 21, 2006, state agency physician Michael Baumblatt completed a physical residual functional capacity assessment for plaintiff, listing a diagnosis of right adhesive capsulitis. AR 695. Baumblatt found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour work day with no pushing or pulling with her right arm and limited reaching and handling. AR 697-98.

On November 27, 2006, state agency physician Pat Chan completed a physical residual functional capacity assessment for plaintiff, listing diagnoses of right upper

7

extremity adhesive capsulitis and adjustment disorder. AR 846. Chan found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday, but could not push or pull with her right upper extremity. He recommended that plaintiff refrain from using her right upper extremity and seek one-armed work. AR 848-49.

On June 7, 2007, Dr. David Fey, an orthopedic surgeon, performed an independent medical evaluation of plaintiff in connection with her workers' compensation claim  AR 1040. He noted she was right-hand dominant. AR 1042. Fey wrote that plaintiff had subjective complaints of persistent right shoulder pain and stiffness as well as left shoulder pain. AR 1050. He noted that plaintiff might have a predisposition to the development of adhesive capsulitis or "frozen shoulder". AR 1051. He concluded that plaintiff could work with no lifting greater than five pounds with the right upper extremity and no work above the waist level with the right upper extremity. He noted that plaintiff displayed symptom exaggeration. AR 1054.

### D.  Hearing Testimony

At the administrative hearing, plaintiff testified that she worked as a housekeeper until she injured her right shoulder on the job. She testified that she had had two surgeries and two manipulations. She testified that she was right-handed but that she used her left

8

hand more since her injury and had basically become left-handed. She wrote, ate and picked up coins easily with her left hand. AR 14-15, 21.

Plaintiff testified that she had not looked for work because of personal problems involving her oldest daughter. AR 16. She testified that she has not looked for work for approximately one year. AR 18.

Plaintiff testified that she took Amitriptyline for depression and to help her sleep and she took Ultram for pain. AR 17. She testified that sometimes the pain "gets to her," AR 23, and the medications make her sleepy. AR 26.

Plaintiff testified that she shopped, drove, took care of herself and performed some household chores, including laundry. AR 13, 15-16, 23. Also, she testified that she walked, rode her bike, camped, attended family events and could put together some puzzles. AR 19. Although plaintiff testified that she could stand for only 20 minutes, she testified later that she had no problem standing. AR 20.

The administrative law judge called Ed Utities to testify as a neutral vocational expert. AR 29. The administrative law judge asked the expert to assume an individual of plaintiff's age and educational background who could perform light work with no pushing or pulling with the right upper extremity and no use of the right upper extremity advised. The administrative law judge noted that the individual could perform one-armed work with the left arm, which was previously the non-dominant but was now the dominant extremity. He

9

asked the expert whether the individual could perform plaintiff's past work. AR 31. The expert testified that the individual could not perform plaintiff's past work.

Then the administrative law judge asked whether there were jobs available in the regional or national economy that the person could perform. The expert explained that if the person could use her non-dominant arm (right) in a bracing fashion and use her dominant arm (left) for performing various types of functions, there would be a number of jobs the individual could perform. If the individual could not use her right arm at all, there would still be jobs available that the individual could perform, including surveillance system monitor (500 jobs in Wisconsin), parking enforcement officer (500 jobs in Wisconsin), usher (300 jobs in Wisconsin) and hostess (620 jobs in Wisconsin). AR 32-33. Although the administrative law judge suggested that the individual could perform a cashier job one-handed, the expert disagreed, stating that the person might need to use both hands to grab an object or perform different functions of such a job . AR 32-33. The expert testified that his testimony was consistent with the information contained in the Dictionary of Occupational Titles and the Minnesota Department of Work force Development, with the exception that he believed a hostess job could be performed essentially using one arm. AR 33, 35.

E. <u>Administrative Law Judge's Decision</u>

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the five-step sequential analysis in 20 C.F.R. §§ 404.1520 and 416.920. At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since March 17, 2004, her alleged onset date. At step two, he found that plaintiff had severe impairments of right shoulder adhesive capsulitis and chronic shoulder pain. AR 48. At step three, the administrative law judge found that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1. He found specifically that plaintiff did not meet Listing 1.02, Major Dysfunction of a Joint. AR 51.

The administrative law judge found that plaintiff retained the residual functional capacity to perform light work with no pushing or pulling with the right arm, using the right arm only for bracing. AR 51.

At step four, the administrative law judge found that plaintiff was not able to perform her past work. AR 53. At step five, relying on the testimony of the vocational expert, the administrative law judge found that plaintiff was not disabled because there were jobs in significant numbers in the national economy that she could perform. AR 54.

11

OPINION

A. Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993). Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, she must build a logical and accurate bridge from the evidence to her conclusion. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

12

B.  Listed Impairments

Plaintiff contends that the administrative law judge erred in determining that her right shoulder condition did not equal the severity of Listing 1.02, Major Dysfunction of a Joint.  To meet this listing, plaintiff would have to show "involvement of one major peripheral joint in *each* upper extremity (i.e. shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively."  20 C.F.R., Pt. 404, Subpt. P, App.1, 1.02 (emphasis added).  Plaintiff concedes that she could not have met the listing because only her right shoulder was involved, but she argues that her condition was medically equivalent to the listing.  However, she points to no medical evidence in the record to support her argument.  Instead the medical evidence shows that only her right upper extremity was involved.  Further, Drs. Lemker. Erickson and Fey indicted that plaintiff could work with limited use of her right upper extremity.  Examinations indicated that plaintiff had reasonably well preserved flexion and extension with limitation of internal rotation and x-rays were generally unremarkable.  This evidence does not support her argument that her condition was medically equivalent to the listing.

Next, plaintiff argues that the administrative law judge should have found that her shoulder impairment met or equaled Listing 1.08, Soft Tissue Injury (e.g. burns).  20 C.F.R., Pt.404, Subpt. P, App.1, 1.08.  This listing requires a soft tissue injury "of an upper or lower extremity, trunk, or face and head, under continuing surgical management . . . directed

13

toward the salvage or restoration of a major function.: Id. Loss of a major function is defined as "inability to perform fine and gross movement effectively on a sustained basis." 20 C.F.R. Pt. 404, Subpart P, App. 1 §1.00(2)(a), which is further defined as "an extreme loss of function of *both* upper extremities." Id. at §1.00(2)(c) (emphasis added). As discussed above, plaintiff has an impairment in only one upper extremity. Further, she has not pointed to any evidence that she has a condition that meets this listed impairment.

### C. Ability to Work

Plaintiff argues that the administrative law judge erred in not finding that she was disabled for a closed period from March 2004 through October 2006. The basis of her argument is that during this time she would have missed more than two days a month because of doctors' visits. However, there is no evidence in the record that she could not work for a continuous twelve-month period. Six months after her March 2004 injury, Dr. Lemker found that she could to return to light work. Although she states that she was unable to work for several months in 2005, Dr. Lemker found that she could perform sedentary work in July 2005. Again in 2006, plaintiff may have been unable to work for several months but doctors found that plaintiff could return to sedentary work in May 2006. In sum, although plaintiff saw doctors on a number of occasions between 2004 and 2008, there is no medical evidence that plaintiff could not work for medical reasons. Moreover,

plaintiff testified that she could not work for reasons unrelated to her shoulder impairment.

Next, plaintiff argues that because she was right-hand dominant and not left-hand dominant, there were no jobs that she could perform. The vocational expert based his testimony on the administrative law judge's hypothetical that the individual was left-hand dominant. Although there is evidence in the record that plaintiff was right-handed, she testified that she taught herself to be left-handed. Plaintiff argues that she did not become left-handed until the time of the hearing, but there is evidence in the record that she was driving and doing household chores with her left hand in the summer of 2006. It was reasonable for the administrative law judge to assume from plaintiff's testimony at the hearing that she was left-handed.

Finally, plaintiff argues that the administrative law judge erred in finding that there were a significant number of jobs available in the economy that she could perform. In answering the administrative law judge's hypothetical question, the expert stated that an individual who had no use of her right arm at all could perform jobs such as surveillance system monitor, parking enforcement officer, usher and hostess. Plaintiff has presented no evidence that this testimony was inconsistent with the Dictionary of Occupational Titles. The expert testified that the only discrepancy between his testimony and the Dictionary was that although the Dictionary required the use of two hands for the hostess job, he concluded that the job could be performed with one arm. Thus, the expert's testimony provided

15

substantial evidence that there were significant jobs existing in the regional economy that plaintiff could perform.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security is AFFIRMED and plaintiff Theresa M. Ernst's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 15th day of June, 2010.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge